IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01664-PSF

THOMAS R. LECHMAN,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter came before the Court on oral argument on October 23, 2006 at 10:00 a.m. The Court having received the arguments and submissions of counsel now enters the following Order.

## I. BACKGROUND

Plaintiff Thomas Lechman appeals from the decision of the Commissioner denying disability insurance benefits. The Commissioner's decision became final on June 24, 2005 when the Appeals Council found no reason to review the Administrative Law Judges's ("ALJ") decision of May 9, 2003. Plaintiff has timely filed his appeal in this Court on August 26, 2005 (Dkt. # 1). The Social Security Administration Record ("AR") was filed on October 31, 2005 (Dkt. # 4). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Mr. Lechman filed his claim for benefits on January 4, 2002, claiming an onset date of June 19, 2000. AR 54-56. In his Disability Report, Mr. Lechman explained that

he fell off a ladder and broke three ribs, and since that time has experienced pain in his upper and lower back, shoulder, neck, arm, and both legs.  AR 70.  He contends that the pain limits his ability to lift, stand, sit, twist or bend, and has reduced his stamina.  *Id.*

Mr. Lechman returned to work on May 15, 2002.  AR 496.  He engaged in substantial gainful activity thereafter.  AR 494.  Thus, the timeframe for which Mr. Lechman is claiming disability is June 19, 2000 to May 15, 2002.  Pl.'s Br. at 3.  During this time, Mr. Lechman was between 52 and 54 years of age.  *See* AR 495 (testimony by Mr. Lechman as to his date of birth, November 16, 1947).

## II. PLAINTIFF'S MEDICAL TREATMENTS AND RECORDS

### A. Physical Medical Evidence

Mr. Lechman first sought medical help from his treating physician, Dr. James F. Day, on June 19, 2000 for his fractured ribs.  AR 385.  Dr. Day prescribed physical therapy in August 2000.  AR 382.  After 12 visits to the physical therapist, Mr. Lechman was discharged in October 2000 with treatment instructions that included continuing a home exercise program.  AR 418.

Dr. George Schakaraschwilo saw Mr. Lechman on September 27, 2000 for a second opinion evaluation.  AR 272-75.  Dr. Schakaraschwilo noted that Mr. Lechman may be suffering from a back injury and that Mr. Lechman demonstrated some exaggerated responses and symptom magnification.  AR 274.  In his initial evaluation, Dr. Schakaraschwilo suggested that Mr. Lechman be restricted to lifting no greater than

ten pounds.  *Id.*  In addition to several other physicians, Dr. Schakaraschwilo continued to treat Mr. Lechman through May 2001.  AR 212-13.

Mr. Lechman visited Dr. Christopher Smith in November of 2000 for severe pain in his upper back.  AR 372.  Approximately two weeks after the initial consultation, Dr. Smith completed a progress statement for Mr. Lechman's insurance carrier, concluding that Mr. Lechman was disabled from the date of onset, June 19, 2000, and would be disabled for another nine months (from November 2000).  AR 367.

Mr. Lechman attended physical therapy for the second time in December 2000, pursuant to a referral by Dr. Schakaraschwilo.  AR 157-59.  Mr. Lechman was discharged after 13 weeks with instructions to continue a home exercise program.  *Id.*

In March 2001, Dr. Craig Davis performed surgery on Mr. Lechman's right arm for carpal tunnel syndrome and on his right rotator cuff.  AR 280.  Almost three months post-surgery, Dr. Davis reported that Mr. Lechman had about 95% range of motion in his shoulder but that the patient still complained of soreness  AR. 276-77.

Dr. Robert Kawaski saw Mr. Lechman from July through October 2001 for physical therapy.  AR 307-15.  Mr. Lechman reported improvement overall but was not interested in surgery.  AR 307-08.  Dr. Kawasaki referred plaintiff to a pain program with Dr. Kathy McCranie.  AR 307.

In December 2001, Dr. McCranie concluded that Mr. Lechman was a good candidate for the pain management program.  AR 337.  After plaintiff completed the three-week program, Dr. McCranie concluded that he could return to work with the following "minimal capabilities" (AR 324-25):  he can sit and walk frequently and stand

occasionally; he can lift 20-25 pounds from floor to overhead occasionally; he can lift and carry 25 pounds occasionally and push and pull 20 pounds of force occasionally; he can climb stairs, squat, crouch, and bend occasionally.  AR 325-26.  Dr. McCranie also noted that Mr. Lechman's demonstrated physical abilities were greater than he described.  AR 325.

### B. Mental Medical Evidence

Mr. Lechman was referred to Donna Bar-Navon, Psy.D, in March 2001 for a psychological evaluation, and he continued to see Dr. Bar-Navon for additional sessions thereafter.  AR 180-82, 195-98.  Dr. Bar-Navon concluded that Mr. Lechman was depressed and had a negative attitude which impeded his ability to recover.  AR 181.  In addition, Dr. Bar-Navon's test results indicated that Mr. Lechman's pain responses were exaggerated.  AR 198.  Mr. Lechman began taking medication for his depression in early February 2001 as prescribed by Dr. Schakaraschwilo.  AR 240 (noting that Mr. Lechman had been taking the medication "for about one week").

Anne Steinberg, Ph.D, performed a psychological screen in December, 2001.  AR 319.  She found that Mr. Lechman had a depressive disorder with associated anxiety.  AR 322.  In addition, Dr. Steinberg concluded that Mr. Lechman demonstrated some symptom magnification and that his pain report may be unreliable.  *Id.*

In March 2002, Dr. Robin Pedow completed a psychiatric review based on a review of Mr. Lechman's medical records.  AR 143-156.  Dr. Pedow reported that Mr. Lechman had a depressive disorder, anxiety, and a pain disorder.  *Id.*

### C. Residual Functional Capacity Assessments

Dr. Smith completed a residual functional capacity ("RFC") questionnaire in February 2002, concluding that the patient could sit on occasion for one hour, stand on occasion for 30 minutes, and could only sit, stand, or walk for two hours each in an eight-hour day. AR 339-42. Also, Mr. Lechman could carry up to ten pounds occasionally but should never carry 20 pounds or more. AR 342. Finally, Dr. Smith concluded that the patient should never crouch or climb ladders and could rarely twist, stoop, and climb stairs. *Id.*

At the request of the Commissioner, Dr. Alan Ketelhorn assessed Plaintiff's RFC in February 2002. AR 122-29. Dr. Ketelhorn reported that Mr. Lechman could lift and carry 20 pounds occasionally and ten pounds frequently, and could stand, sit, or walk six hours per eight hour work day. AR 123. Dr. Ketelhorn did not actually examine Mr. Lechman, but rather relied on the medical evidence in the file, including Dr. McCranie's notes from December 2001. AR 124, 128.

In March 2002, Pat McKenna, a Registered Occupational Therapist, conducted an occupational feasibility evaluation. AR 103. According to the evaluation, Mr. Lechman's abilities were more limited than previously stated: Mr. Lechman could occasionally lift and carry up to six pounds, but could never lift and carry more than ten pounds. AR 109. Moreover, Mr. Lechman could sit for 30 minutes at a time, stand for five minutes, and walk for up to 30 minutes. AR 108.

Dr. McCranie completed an RFC evaluation in October 2002. AR 375-81. Dr. McCranie reported that Mr. Lechman could lift and carry from less than ten pounds

up to 25 pounds only occasionally. AR 376. She also reported that in an eight-hour workday Mr. Lechman could sit for 5.25 hours, stand for 2.5 hours, and walk for 5.25 hours. *Id.* Mr. Lechman could balance continually and reach frequently. AR 377-78. He could occasionally climb, stoop, crouch, kneel, crawl, and push or pull. *Id.* Use of his hands and feet were unaffected. *Id.*

### III. THE ALJ'S DECISION

In a written decision, the ALJ denied benefits at step five of the five-step evaluation process, finding that Mr. Lechman could perform jobs existing in significant numbers in the economy. AR 27, 29; *see generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five-step evaluation process). In reaching his decision, the ALJ concluded that Mr. Lechman's statements were not reliable because his complaints of pain were more exaggerated than what was established by the medical evidence. AR 25. In addition, the ALJ found that various treatments had been generally successful in controlling Mr. Lechman's pain. AR 26. The ALJ rejected the opinion of Dr. Christopher Smith as inconsistent with the record as a whole and as not supported by significant medical findings. *Id.* Although the ALJ did not expressly give controlling weight to any one medical opinion, his findings are most similar to those made by Dr. McCranie. AR 26-27.

At the hearing, Dr. Anthony Manual, a vocational expert ("VE"), testified about hypothetical situations that took into account Mr. Lechman's age, education, vocational background, and RFC (described below). AR 27. The VE testified that a person in the first hypothetical could engage in light, unskilled jobs existing in the economy, such as

cashier, assembler or packager. AR 526-27, 529. The VE eroded the number of jobs available by 25% for those jobs that required greater than frequent reaching above the head. AR 527, 530-31. The ALJ had posed the hypothetical to restricting the amount of time the person could stand or sit per occasion. AR 524. The VE concluded that the same light, unskilled jobs existed, but the number would be eroded by a total of 50% for the sitting and standing restrictions. AR 532. In a further restriction to the hypothetical, the ALJ reduced the lifting capacity to less than ten pounds. AR 533-34. The VE concluded that with such a restriction the hypothetical person could perform only sedentary jobs, and that the person had no transferable skills. AR 534. Finally, in response to a question posed by Mr. Lechman's counsel, the VE concluded that if concentration prevented a person from meeting production or quality assurance standards, then the person would not be able to maintain the job. AR 537-38.

Accepting the opinion of the VE, the ALJ found that Mr. Lechman was unable to perform any of his past relevant work, was closely approaching advanced age, had only a high school education, and had the following RFC:

> [L]ift and carry 20 pounds occasionally and ten pounds frequently, stand and walk 30 minutes per episode for 4 to 5 hours of an 8-hour workday and sit 30 minutes per episode for 4 to 5 hours out of an 8-hour workday with regular breaks. He can occasionally push, pull, use ramps and stairs, and stoop kneel, crawl, and twist. He can frequently balance. He can frequently handle and finger using his right upper extremity. He should never use ladders, ropes, or scaffolds, crouch, or work at unprotected heights.

AR 29. The ALJ found that Mr. Lechman's RFC allowed him to perform jobs existing in significant numbers in the national and local economies, with a 25% erosion for frequent reaching and handling. AR 28-29. Therefore, Mr. Lechman was not under

a "disability" at any time through the date of his decision. *Id.* The ALJ discussed the psychological evaluations early in his opinion, but did not make any express findings about those evaluations. *Id.*

## IV. PLAINTIFF'S APPEAL

Plaintiff asserts four errors. First, he alleges that the ALJ failed to apply the correct legal standard when he rejected the opinions of treating physicians and concluded that Mr. Lechman could frequently lift and carry ten pounds. Pl.'s Br. at 7-8. Plaintiff contends that this is contrary to the medical evidence and such a limitation would qualify Mr. Lechman for only sub-sedentary work with no transferable skills, making him disabled. *Id.* Second, plaintiff asserts that the ALJ erred when he ignored the psychological limitations in the record. *Id.* at 7, 9. Plaintiff's third asserted error is that the ALJ incorrectly adopted a 25% erosion factor in determining whether significant jobs in the economy were available to plaintiff, whereas the VE testified to a 50% erosion. *Id.* Specifically, plaintiff notes that there was no finding that Mr. Lechman could meet production standards, so the ALJ failed to meet his burden to show that there were jobs in the economy that Mr. Lechman could perform. *Id.* at 9. Finally, plaintiff asserts that the ALJ erred when he failed to consider the findings of the occupational therapist, Pat McKenna. *Id.* at 7, 9.

## V. STANDARD OF REVIEW

When a federal court reviews the Commissioner of Social Security's decision to deny social security benefits, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.

2001). The court's job is to decide whether substantial evidence in the record supports the Commissioner's factual findings as a whole and whether the Commissioner applied the correct legal standards. *Id.*; *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)

Substantial evidence is defined as more than a scintilla, but less than a preponderance; is it such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See, e.g.*, *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996); *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). Put another way, if other evidence in the record overwhelms the Commissioner's determination, or if only a mere scintilla of evidence supports the decision, it is not based on substantial evidence. *Salazar v. Barnhart*, – F.3d –, 2006 WL 2875613 at *5 (10th Cir., Oct. 5, 2006). The Commissioner's decision may also be reversed for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)).

## VI.  ANALYSIS

### A.  Psychological Impairments

The Court begins by addressing the plaintiff's second asserted error, the alleged failure of the ALJ to consider plaintiff's psychological limitations. The ALJ must "consider the combined effect of all . . . impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523*; Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004). In doing so, the ALJ is required to evaluate the person's ability to meet mental requirements of work

in assessing an RFC. 20 C.F.R. § 404.1545(a)(4); *Cruse v. U.S. Dep't of Health and Human Services*, 49 F.3d 614, 617 (10th Cir. 1995). Substantial weight or deference must be given to a medical opinion, including a psychiatric or psychological opinion, of a treating physician unless the ALJ articulates specific reasons for rejecting that opinion. *See e.g., Langley*, 373 F.3d at 1119, 1122-23; *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994). Finally, although an ALJ is not required to discuss every piece of evidence in the record, the ALJ must discuss evidence that supports his decision, significant evidence that he rejects, and "uncontroverted evidence he chooses not to rely on." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The evidence that Mr. Lechman was suffering from depression and had a pessimistic mood that was negatively affecting his ability to recover is uncontroverted. The ALJ mentioned two psychological evaluations in his decision when reciting plaintiff's medical history, AR 22, 23, but did not discuss what effect, if any, Mr. Lechman's mental impairments had on his findings. AR 27-28. Because the ALJ's decision is silent as to the effect of those mental impairments,[1] the Court is unable to determine whether those impairments were discredited for valid reasons or simply ignored. Accordingly, remand for determination of this issue is warranted. *See Langley*, 373 F3d at 1124 (remanding where ALJ failed to consider the combined

---

[1] The Commissioner contends that the ALJ addressed Mr. Lechman's mental impairments when he concluded that Mr. Lechman had a "pain disorder." Def's Resp. 21. The Court disagrees with the Commissioner that this statement demonstrates a conclusion with respect to Mr. Lechman's mental impairments. After the ALJ found that Mr. Lechman had a "pain disorder" and several other problems, he concluded that the impairments were not severe, explaining that there was no evidence that they satisfied certain listings for *physical* impairments. AR 24-25. During this analysis, the ALJ does not mention any listings for *mental* impairments. *Id.*

effect of impairments); *cf. Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (remanding where the ALJ failed to offer an explanation for the weight, if any, he gave to an opinion of a claimant's treating physician).  The Court of course takes no position on the merits of this remanded issue.

### B.  Plaintiff's Remaining Asserted Errors

As his fourth basis for error, Mr. Lechman contends that it was error for the ALJ to not discuss the evaluation of Pat McKenna, a Registered Occupational Therapist. Pl.'s Br. at 7, 9.  An ALJ is required to evaluate all medical opinions, but *may* also evaluate other sources.  20 C.F.R. §§ 404.1527(d), 404.1513(d).  Thus, evaluation of "other sources" is permissive, not mandatory.  *Crawford v. Massanari*, 2001 WL 1943879 at *2 (N.D. Okla., Aug. 24, 2001), *aff'd*, 44 Fed. Appx. 385 (10th Cir., Aug. 13, 2002) ("The ALJ must not reject opinions from medical sources without giving specific reasons, whereas he may reject the opinions of 'other sources' without explanation."); *see also Gatts v. Barnhart*, 2004 WL 723492 at *7 (D. Kan., Mar. 25, 2004) (citing *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding that the ALJ did not have to rely on a physical therapist's opinion because such an opinion was entitled to less weight than medical opinions)).  A registered occupational therapist is not an acceptable source for a medical opinion, 20 C.F.R. § 404.1513(a), but does qualify as an "other source."[2]

---

[2] Plaintiff cited 20 C.F.R. § 404.1513(d)(1) for the proposition that an occupational therapist is a medical source.  Pl.'s Br. at 4 n.3.  However, this is an incomplete reading of the regulation.  While section 404.1513(a) defines "medical sources," section 404.1513(d) defines "other sources," and includes therapists.

11

20 C.F.R. § 404.1513(d)(1). Accordingly, the ALJ was not required to evaluate or rely on the opinion of the occupational therapist.

Plaintiff also asserts that the ALJ erred with respect to the frequent lifting finding. Pl.'s Br. at 7-8. Mr. Lechman was found to be able to lift and carry ten pounds frequently. AR 27. However, in both the pain program report and the RFC evaluation, Dr. McCranie indicated that Mr. Lechman could lift and carry less than ten pounds up to 25 pounds only occasionally. AR 324-26, 376. The Commissioner points out that these limitations were "minimal capabilities." Def.'s Br. at 16. However, Dr. McCranie did not provide an explanation about whether "minimal" referred to the amount of weight, the frequency of the activity, the duration of the activity, or all of the restrictions. AR 324-25. Dr. Ketelhorn provides the only medical opinion in the record that Mr. Lechman could lift and carry ten pounds frequently, yet Dr. Ketelhorn's opinion is generally entitled to less weight because he did not actually see or treat the patient. 20 C.F.R. 404.1527(d). Further, this opinion appears to contradict Dr. McCranie's opinion that Mr. Lechman should lift such weight only occasionally. Thus, the statement in Dr. Ketelhorn's report indicating that his findings are not significantly different than findings by others, specifically those of Dr. McCranie, does not appear supportable on its face. AR 128. With the exception of Dr. Smith's opinion, which was properly rejected due to a lack of specific findings, *see Castellano*, 26 F.3d at 1029, the ALJ did not indicate whether one medical opinion received more weight than the others, and so the Court cannot determine whether certain opinions were accepted, rejected, or simply ignored. *See Watkins*, 350 F.3d at 1301 (explaining that the court cannot meaningfully

review the ALJ's decision absent findings explaining the weight assigned to a treating physician's opinion). Thus, clarification regarding the basis of the frequent lifting finding is appropriate.

With respect to the third appeal ground, the erosion factor that the ALJ adopted, the ALJ properly consulted a VE because there is a finding that Mr. Lechman must alternate sitting with standing. SSR 83-12; *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Where a VE is consulted, the ALJ should rely on the VE testimony to determine whether there are significant jobs in the economy that the claimant can perform. SSR 83-12 ("[A] [VE] should be consulted to clarify the implications for the occupational base."); *see also Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) (VE testimony is required to determine whether significant jobs exist which the claimant can perform).

In this case, the ALJ purported to adopt the testimony of the VE, but his adoption of the 25% erosion factor appears inconsistent with the testimony of the VE. The ALJ gave the VE three hypotheticals, the second of which was most similar to Mr. Lechman's RFC. AR 524, 532. In the second hypothetical, the VE eroded the job base by 50%, not by the 25% that the ALJ adopted. AR 532. It is not clear from the record why the ALJ chose to adopt the 25% erosion factor, so clarification on this issue is appropriate on remand.

## VI.   CONCLUSION

For the reasons set forth above, the Court ORDERS the case REMANDED to the Commissioner of Social Security for further proceedings consistent with this

opinion, particularly a determination of the effect of Mr. Lechman's combined physical and mental impairments. In addition, the ALJ shall clarify the record with respect to the frequent lifting finding and erosion factor.

DATED: October 31, 2006.

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge